**IT IS ORDERED as set forth below:**

**Date: March 30, 2020**



_____

**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| HENRY C. HARDIN, III | : | BANKRUPTCY CASE |
| | : | 18-70395-LRC |
| Debtor. | : | |
| _____ | : | |
| ZURICH AMERICAN INSURANCE CO., | : | ADVERSARY PROCEEDING |
| AMERICAN ZURICH INSURANCE CO., | : | NO. 19-05145-LRC |
| THE ZURICH SERVICES CORP., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HENRY C. HARDIN, III, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

**<u>ORDER</u>**

Before the Court is the Motion for Summary Judgment (the "Motion") (Doc. 7)

filed by Plaintiffs Zurich American Insurance Company, American Zurich Insurance Company, and The Zurich Services Corporation (collectively, "Zurich"), which is opposed by debtor Henry C. Hardin, III ("Defendant").  The Motion arises in connection with the complaint to determine the dischargeability of a particular debt pursuant to §§ 523(a)(2) and 523(a)(6) filed by Zurich against Defendant.  Accordingly, this matter constitutes a core proceeding, over which this Court has subject matter jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(I), § 1334.

## FINDINGS OF FACT

On May 2, 2013, Zurich commenced an arbitration against Professional Management Services Group, Inc. ("PMSG") and other affiliated companies before the American Arbitration Association, Case Nos. 51 20 1300 0514 and/or 51 195 514 13, to resolve disputes arising under the parties' workers compensation insurance program spanning from March 1, 2004, to March 1, 2012. Zurich's Statement of Undisputed Material Facts ("ZSF"), ¶ 1; Defendant's Statement of Undisputed Material Facts ("DSF"), ¶ 1.  On May 7, 2015, the arbitrators entered a final award in favor of Zurich and against PMSG (the "Final Award").  ZSF, ¶ 2; DSF, ¶ 2.  On July 23, 2015, the United States District Court for the Northern District of Illinois, Case No. 14-03454, confirmed the Final Award and entered a final judgment in favor of Zurich and against PMSG in conformity with the Final Award. ZSF, ¶ 3; DSF, ¶ 3.

2

The Final Award and related judgment require PMSG to (a) pay Zurich $16,307,224 in principal and interest and (b) post with Zurich an additional $1,355,480 in collateral.  ZSF, ¶ 4; DSF, ¶ 4.  PMSG did not pay Zurich any of the amounts due for the Final Award and related judgment.  ZSF, ¶ 5; DSF, ¶ 5.

On June 28, 2016, Zurich filed a complaint in the United States District Court for the Northern District of Georgia (the "District Court") against Defendant (the "Alter Ego Case"), contending that, as the alter ego of PMSG, Defendant was responsible for PMSG's debt to Zurich. ZSF, ¶ 6; DSF, ¶6; Exhibit D to Declaration of Bohdan Gursky. Zurich filed the Alter Ego Case pursuant to federal diversity jurisdiction and subject to Georgia state law.  ZSF, ¶ 7; DSF, ¶ 7.  Defendant appeared in the Alter Ego Case, retained counsel, participated in pre-trial proceedings, and defended himself at the week-long jury trial. ZSF, ¶ 8; DSF, ¶ 8.

The jury trial commenced in the Alter Ego Case on June 4, 2018.  ZSF, ¶98; DSF, ¶ 9.  The District Court's jury instructions with regard to Zurich's alter ego claim, included the following:

> [T]he concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has disregarded the corporate entity such that the corporation has become a mere instrumentality of his or her own affairs, that there is such unity of interest [and] ownership that the separate personalities of the corporation and the individual no longer exist and that the owner has overextended his or her privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort

3

responsibility. There must be evidence of abuse of the corporate form.

ZSF, ¶ 10; DSF, ¶ 10.  Both Zurich and Defendant consented to include the above in the jury instructions.  ZSF, ¶ 11; DSF, ¶ 11.  The jury instructions also included the following:

> A creditor may establish that an owner did so by showing that the owner engaged in certain conduct, for example, by showing (a) commingling of corporate and personal finances, (b) siphoning-off of corporate funds to pay personal expenses, (c) unsecured, interest-free loans from the corporation to the owner, (d) the plaintiff's inability to satisfy a legitimate debt if the corporate fiction is not disregarded, (e) when failure to disregard the corporate fiction would present an element of injustice or fundamental unfairness, (f) the defendant is a shareholder, director, and officer of the corporation, (g) the defendant exerts substantial if not exclusive control over the corporation, and (h) non-functioning of other officers or directors. No one of these factors is determinative, and not all of the factors are required.

DAUF, ¶ 3, Zurich's Supplemental Statement of Undisputed Material Facts and Responses to Hardin's Statement of Additional Undisputed Material Facts ("ZSSUMF"), ¶ B.3; Exhibit B & C to Declaration of Julie Young.

On June 8, 2018, the jury completed the verdict form holding Defendant liable as the alter ego of PMSG and awarding Zurich damages in the total amount of $18,102,582. ZSF, ¶ 12; DSF, ¶ 12. Other than the fact that Defendant was the alter ego of PMSG, the jury verdict form contains no findings of fact.  Defendant's Additional Undisputed Facts ("DAUF"), ¶ 1; ZSSUMF, ¶ B.1; Exhibit E to Declaration of Bohdan Gursky.  On June 8,

4

2018, the District Court issued a judgment on the jury verdict (the "Judgment"). ZSF, ¶ 13; DSF, ¶ 13.

On December 4, 2018, Defendant filed a voluntary petition under Chapter 7 of the Code. ZSF, ¶ 16; DSF, ¶ 16. On April 12, 2019, Zurich timely filed a proof of claim in Defendant's bankruptcy estate in the total amount of $26,612,074, including both secured and unsecured amounts. ZSF, ¶ 17; DSF, ¶ 17. Defendant does not dispute that amounts remain unpaid on the debt he owes to Zurich. ZSF, ¶¶ 14-15; DSF, ¶¶ 14-15; ZSSUMF, ¶¶ B.14-B.15; Defendant's Response to Zurich's Supplemental Statement of Undisputed Material Facts, ¶¶ 14-15, 18.

## CONCLUSIONS OF LAW

Plaintiff seeks partial summary judgment as to the nondischargeability of the debt under § 523(a)(6) based solely on the collateral estoppel effect of the Judgment.

A. *Summary Judgment Standard*

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy proceedings under Rule 7056 of the Federal Rules of Bankruptcy Procedure), the Court will grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hairston v. Gainesville Sun Publ'shg Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993). A fact is material if it might affect the outcome of a proceeding under the governing

substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co*., 692 F2d 1370, 1372 (11th Cir. 1982).

To determine whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* FED. R. CIV. P. 56(e).

B.      *Section 523(a)(6)*

A presumption exists that all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability. 11 U.S.C. § 727(b). The creditor bears the burden to prove an exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993). Courts narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir. 1994); *St. Laurent*, 991

6

F.2d at 680.

Section 523(a)(6) excepts from discharge an individual's debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "Section 523(a)(6) generally relates to torts and 'may apply to a broad range of conduct causing harm to people . . . . subject to the limitation the injury be 'willful and malicious.'" *In re Smith*, 592 B.R. 390, 395 (Bankr. N.D. Ga. 2018) (Hagenau, J.) (citing 4 Alan N. Resnik & Henry J. Sommer, Collier on Bankruptcy ¶ 523.12 (16th ed. 2017)). The term "willful" means intentional and deliberate; "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will." *Id.*; *see also In re Watson*, 2019 WL 5388061, at *3 (Bankr. N.D. Ga. Oct. 18, 2019) ("To establish malice, Plaintiffs must show that Defendant's actions were 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" (quoting *In re Jennings*, 670 F.3d 1329, 1334)). The debtor must have actually intended the injury, "not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original); *see also Watson*, 2019 WL 5388061, at *3 ("'[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury.'"). The plaintiff must show the debtor "had a subjective motive to inflict

7

injury or believed his conduct was substantially certain to cause injury." *Hot Shot Kids, Inc. v. Pervis (In re Pervis)*, 512 B.R. 348, 376 (Bankr. N.D. Ga. 2014) (Hagenau, J.). The Court may infer the debtor's subjective intent from the surrounding circumstances. *Id.*

C.   *Collateral Estoppel*

"The doctrine of collateral estoppel prohibits re-litigation of issues already adjudicated by a valid and final judgment of another court." (citing *HSSM #7 Ltd. P'ship v. Bilzerian (In Re Bilzerian)*, 100 F.3d 886, 892 (11th Cir. 1996)). *In re Watson*, 2019 WL 5388061, at *3 (Bankr. N.D. Ga. Oct. 18, 2019) (Ellis-Monro, J.). Collateral estoppel applies in non-dischargeability actions. *Grogan*, 498 U.S. at 285 n.11. When determining the "preclusive effect of a federal judgment where the court exercised diversity jurisdiction," the Court applies federal common that "borrows the state rule of collateral estoppel." *CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017). Therefore, as the Judgment was rendered by a federal district court sitting in diversity in Georgia, the Court will apply the Georgia rules of collateral estoppel.

Under Georgia law, collateral estoppel applies when the following elements are met: 1) there is an identity of parties between the two cases; 2) there is an identity of issues between the two cases; 3) the issue in question was actually and finally litigated; 4) the adjudication was essential to the earlier action; and 5) the parties had a full and fair

8

opportunity to litigate the issues in question. *See Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010) (Hagenau, J.); *Lusk v. Williams (In re Williams)*, 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002) (Mullins, J.).

The parties disagree as to only one element of the collateral estoppel doctrine—whether there is an identity of issues between the jury's finding that Defendant was the alter ego of PMSG and the requirement that the debt owed by Defendant to Zurich was incurred by Defendant's willful and malicious injury to Zurich. Zurich maintains that the jury's verdict necessarily required a finding that Defendant overextended his privilege in the use of PMSG's corporate form in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility and that any of these options equates to a finding that Defendant intentionally caused an injury to Zurich's property through wrongful conduct. Defendant argues that, based on the jury instructions, the jury could have found Defendant liable without concluding that he engaged in wrongful conduct. For example, the jury could have found Defendant to be PMSG's alter ego solely because of Defendant's failure to keep good records and hold board meetings.

The Court agrees with Zurich that the verdict and the structure and content of the jury instructions support the conclusion that the jury found that Defendant intentionally abused the corporate form of PMSG and that such conduct was wrongful. Acting "in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility" is

9

wrongful. Despite Defendant's argument to the contrary, the Court need not know what specific factors the jury considered to reach such a conclusion, as the jury instructions are clear that the jury must have found that Defendant "abused" PMSG's corporate form to achieve an unjust, fraudulent, or wrongful act.[1]  As argued by Zurich, the highlighted factors given to the jury for consideration in reaching its ultimate determination do not change the end result—to award damages to Zurich against Defendant, the jury was clearly required to find that Defendant intentionally abused PMSG's corporate form to achieve a wrongful result of some kind.

That being said, it does not follow that the jury's verdict and the jury instructions establish that Defendant intended to or knew that his actions were substantially certain to cause injury to Zurich's ability to seek repayment of the debt owed by PMSG to Zurich, or that Defendant's conduct, whatever it was, was malicious, which requires not just a finding of wrongfulness, but also a finding that the conduct was without just cause or excessive.

---

[1] The Court also rejects Defendant's argument that the possibility that the jury found Defendant had abused PMSG's corporate form in order to avoid contractual liability cannot serve as the basis for a finding of nondischargeability under § 523(a)(6). Although, ordinarily, breaches of contract are not considered tortious or fraudulent, there is no *per se* rule that an attempt to avoid a contractual obligation cannot be willful and malicious. *See In re Monson*, 661 F. App'x 675, 683 (11th Cir. 2016) (stating that a "'knowing breach of a clear contractual obligation that is certain to cause injury may prevent discharge under Section 523(a)(6), regardless of separate tortious conduct'") (quoting *In re Kane*, 755 F.3d 1285, 1288 (11th Cir. 2014)); *see also In re Williams*, 337 F.3d 504, 510 (5th Cir. 2003) ("[T]he dischargeability of contractual debts under Section 523(a)(6) depends upon the knowledge and intent of the debtor at the time of the breach, rather than whether conduct is classified as a tort[.]").

As to the first, Zurich argues that, because the jury awarded damages in favor of Zurich, the jury must have found that Zurich was injured by Defendant's conduct. Even if that is true, the award of damages does not demonstrate that the jury found that Defendant intended to place Zurich in this position or knew that his conduct was substantially certain to cause injury to Zurich. It shows only that Zurich produced evidence to the jury that PMSG owed it a debt. *See Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 293, 612 S.E.2d 296, 301 (2005) ("Thus, it is readily apparent that where the corporate entity is disregarded, a principal found liable under an alter ego theory should be liable for the entirety of the corporation's debt."). In other words, Zurich essentially asks the Court to assume that Defendant knew that PMSG owed Zurich a debt that would go unpaid as a result of his abuse of the corporate form. Nothing in the jury's verdict, the jury instructions, or the case law cited to this Court suggests that the jury made or was required to make a such a finding in order to award damages to a creditor of PMSG.

Similarly, as to the second, a finding of malice requires more than just a finding that Defendant engaged in wrongful conduct that resulted in an injury. A finding of a malicious injury requires a showing that the conduct was "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *In re Kane*, 755 F.3d 1285, 1288 (11th Cir. 2014). Neither the jury's verdict nor the jury instructions shed any light on the question of whether Defendant lacked an excuse for his conduct.

11

For example, in *In re Draiman*, 2006 WL 1876983, at *6 (Bankr. N.D. Ill. June 22, 2006), the bankruptcy court found that the debtor was precluded from litigating the nondischargeability of a debt incurred as the alter ego of a corporation after noting that the state court judgment included factual finding that debtor's conduct "was malicious because it was wrongful *and* without cause," and that the state court had "reasoned that regardless of [debtor's] subjective 'feelings of disappointment, or even his belief that [his employer] had breached a promise to him[,] does not legally justify the path of self-help that he evidently elected to follow.'" *Draiman*, 2006 WL 1876983 at *6 (emphasis added). In this case, unlike in *Draiman*, the Court has no view into whether the jury considered the existence of any cause or justification for Defendant's conduct.

The Court acknowledges that it need not find that Defendant had the "specific intent to harm" Zurich[2] and may instead find implied malice "if the nature of the act itself implies a sufficient degree of malice." *In re Monson*, 661 F. App'x 675, 683 (11th Cir. 2016). But how can the Court do so here, when the record is silent as to what exactly the jury found Defendant did wrong? As Defendant points out, the jury instructions are merely illustrations of the type of conduct that indicates an individual is the alter ego of an entity. There is simply no way the Court can find, without more specific findings by

---

[2] "The Eleventh Circuit has explained that 'a showing of specific intent to harm another is not necessary,' . . . .[and], [i]nstead, for purposes of § 523(a)(6) '[m]alice can be implied.'" *Matter of Nix*, 2018 WL 3339620, at *7 (Bankr. N.D. Ala. July 6, 2018), *aff'd sub nom. Nix v. PNC Bank, N.A.*, 2019 WL 450853 (N.D. Ala. Feb. 5, 2019).

12

the jury, exactly what actions the jury found Defendant took. Without this information, the Court cannot conclude whether such actions were indeed the type of actions that would warrant an implication of malice.

Further, the Court cannot presume that the jury considered whether Defendant had an excuse for his actions, as Zurich was not required in the Alter Ego Case to show that Defendant acted without just cause or excuse. As explained by the bankruptcy court in *In re Coley*, there is a difference between a finding that an action had been taken willfully and a finding that an action had been taken with malice. 609 B.R. 298, 311 (Bankr. E.D.N.C. 2019). In that case, the court refused to apply collateral estoppel where the first litigation did not require the consideration of "the question of maliciousness in causing injury, as that element was not necessary under relevant portions of the Communications Act." *Id*. As in *Coley*, the jury here "simply was not required to visit the issue of whether [Defendant] 'deliberately' intended to injure [Zurich] instead of just feathering his own nest at its expense." *Id*.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Plaintiffs' Motion for Summary Judgment (Doc. 7) is **DENIED**.

## END OF DOCUMENT

**Distribution List**

Elizabeth Campbell
Locke Lord LLP
Terminus 200, Suite 1200
3333 Piedmont Road, NE
Atlanta, GA 30305

Steven T. Whitmer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

Julie L. Young
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

Leon S. Jones
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309

Leslie M. Pineyro
Jones and Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309

Henry C. Hardin, III
3245 Town Manor Circle
Dacula, GA 30019