**IT IS ORDERED as set forth below:**



**Date: September 22, 2023**

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| | : | |
| HENRY C. HARDIN, III, | : | BANKRUPTCY CASE |
| | : | 18-70395-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| ZURICH AMERICAN INSURANCE CO., | : | ADVERSARY PROCEEDING |
| AMERICAN ZURICH INSURANCE CO., | : | NO. 19-05145-LRC |
| THE ZURICH SERVICES CORP., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HENRY C. HARDIN, III, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

## **ORDER**

On March 30, 2023, the Court entered an order denying in part and deferring in part

a motion for judgment on the pleadings (the "Motion," Doc. 54) filed by Defendant Henry C. Hardin, III ("Hardin") against Plaintiffs Zurich American Insurance Company, American Zurich Insurance Company, and The Zurich Services Corporation (collectively, "Zurich"). (Doc. 73, the "Prior Order"). The Motion sought judgment as to Zurich's complaint to determine the dischargeability of a particular debt, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) (the "Complaint").[1] The Court denied the Motion as to the claim that the debt is nondischargeable under § 523(a)(2) and deferred ruling as to the claim brought under § 523(a)(6) to permit the parties an opportunity to further brief the issue of when the debt at issue arose. Both Hardin and Zurich have filed supplemental briefs and, therefore, the Court must decide whether to grant judgment in favor of Hardin on the § 523(a)(6) claim.

As the Court noted in the Prior Order, on a motion for judgment on the pleadings, the Court must "'accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff.'" *In re Gaddy*, 977 F.3d 1051, 1055–56 (11th Cir. 2020), cert. denied sub nom. *SE Prop. Holdings, LLC v. Gaddy,* 209 L. Ed. 2d 548, 141 S. Ct. 2514 (2021). A complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *In re Diget*, 2021 WL 4484871, at *5 (Bankr.

---

[1] This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I), § 1334.

2

N.D. Ga. Sept. 30, 2021) (quoting Fed. R. Civ. P. 8(a)(2)), and the Court "must draw all inferences in the light most beneficial to Plaintiff," *In re Wells-Lucas*, 2021 WL 1234454, at *12 (Bankr. N.D. Ga. Mar. 31, 2021). The Court must also construe exceptions to discharge narrowly in favor of the debtor. 11 U.S.C. § 727(b); *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir. 1994); *Gaddy,* 977 F.3d at 1056.

As to § 523(a)(6), the Court explained in the Prior Order that the Code excepts from discharge any debt "*for* willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added). "'Injury' means the violation of another's legal right or the infliction of an actionable wrong," and is not "confined to physical damage or destruction," as "an injury to intangible personal or property rights is sufficient." *In re Fairgrieves*, 426 B.R. 748, 757 (Bankr. N.D. Ill. 2010). "'A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury.'" *Gaddy*, 977 F.3d at 1058 (quoting *Kane v. Stewart Tilghman Fox & Bianchi, P.A. (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014)). "And '[m]alicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Id.*; *see also In re Smith*, 592 B.R. 390, 395 (Bankr. N.D. Ga. 2018) (Hagenau, J.); *In re*

3

*Watson*, 2019 WL 5388061, at *3 (Bankr. N.D. Ga. Oct. 18, 2019). The plaintiff must show the debtor "had a subjective motive to inflict injury or believed his conduct was substantially certain to cause injury." *Hot Shot Kids, Inc. v. Pervis (In re Pervis)*, 512 B.R. 348, 376 (Bankr. N.D. Ga. 2014) (Hagenau, J.). The Court may infer the debtor's subjective intent from the surrounding circumstances. *Id*. The debt must be "the result of" an injury caused by the defendant's willful and malicious conduct. *Gaddy*, 977 F.3d at 1058.

In the Prior Order, the Court noted that, to be nondischargeable, the debt must be a debt for a legal injury and that "actions taken by a debtor after a debt is incurred, even if in an effort to thwart a creditor's collection efforts by fraudulently conveying assets," do not "create a separate injury for the purposes of § 523(a)(6)." *In re Gaddy,* at 1058–59. Accordingly, the analysis should focus on allegations regarding the conduct that created the debt rather than allegations of Hardin's attempts to avoid its payment, and, therefore, requires a clear understanding of when the debt arose.

Hardin asserts that the debt arose at the time PMSG and Zurich executed the insurance contracts. Specifically, Hardin argues that the debt arose at the time each non-policy agreement for the applicable annual term was signed. According to Hardin, the facts alleged by Zurich support a finding that, as of December 31, 2014, PMSG owed Zurich $17,642,704 for policy years 2008 through 2012, but that the individual components of that total debt arose on March 1st of each policy year when the agreements were signed.

4

Consequently, Hardin submits that the alleged facts do not establish that the debt was created by any willful and malicious conduct. Hardin also asserts that the allegations fail to support a finding that Hardin fraudulently induced Zurich to enter the contracts without the intent to perform because the facts show that PMSG did, in fact, perform under the agreements for many years, paying millions in premiums and collateral. In response, Zurich urges the Court to conclude that "Hardin's debt to Zurich arose not only at the time the parties contracted, but also thereafter as insurance claims arose. Zurich then issued its loss-sensitive invoices to PMSG, and Hardin deliberately failed to pay those invoices." Zurich's Supplemental Brief ("ZSB"), Doc. 79, at 3. In support of its argument, Zurich contends that in "factually analogous cases, courts have found that the debts/claims arose not only at contract inception, but also after the parties entered into their contracts." *Id*. at 5.

"Debt" is defined by the Bankruptcy Code as "liability on a claim," and "claim" is defined as "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. §§ 101(12), (5); *see also In re United States*

*Pipe & Foundry Co.*, 32 F.4th 1324, 1330 (11th Cir. 2022), cert. denied sub nom. *Buckner v. U.S. Pipe & Foundry*, 2023 WL 4163204 (U.S. June 26, 2023) (stating that "any liability on a claim based on the debtor's conduct that occurred before the effective date of its plan of reorganization is dischargeable so long as there is a relationship between the debtor and creditor before that date"). Zurich agrees that the definition of "debt" and "claim" are "coextensive," and, therefore, "a 'debt' arises when a 'claim' arises." ZSB, at 4. Zurich also recognizes that a "'right to payment' is 'nothing more nor less than an enforceable obligation, regardless of the objectives . . . to [be] serve[d] in imposing the obligation.'" *Id.* (quoting *In re St. Laurent*, 991 F.2d 672, 678 (11th Cir. 1993)).

Zurich correctly asserts that when a "debt arose" is "a question of federal, bankruptcy law." *Matter of Daniels*, 591 B.R. 814, 825 (Bankr. N.D. Ga. 2018) (citing *Epstein v. Official Committee of Unsecured Creditors*, 58 F.3d 1573 (11th Cir. 1995). The question for purposes of this matter, though, is really *what* created the debt—ordinary commercial negotiations for insurance, fraud in the inducement, or some other conduct that caused a willful and malicious injury to Zurich. The Court asked the question *when* the debt arose because, if PMSG/Hardin already owed Zurich a contingent, unliquidated debt at the time PMSG/Hardin allegedly engaged in wrongful conduct to avoid paying the debt, the reasoning of *Gaddy* appears to preclude a finding that the debt was a debt *for* a willful and malicious injury. Instead, the debt would have been *for* the provision of insurance

6

coverage and, whatever conduct PMSG/Hardin engaged in after the fact to avoid paying the debt could not, under *Gaddy*, have created a new debt for willful and malicious injury. In essence, the Court is asking whether an intentional failure to pay an ordinary contractual obligation, even when the party knows that its failure to honor the obligation will harm the other party to the contract, can be considered a legal injury. Put another way, could Zurich make a claim against PMSG/Hardin for an amount beyond what it was already owed, on a theory other than the fact that PMSG/Hardin owed Zurich for insurance coverage and losses incurred as provided under the terms of the contract? It does not appear that Zurich has asserted such a claim nor argued that any legal basis for such a claim exists.[2]

The Court is not convinced that PMSG/Hardin did not owe Zurich a debt that arose upon the yearly signing of the insurance agreements. True, neither party knew at the beginning of the policy year the amount that would be due and Zurich could not have sued on the debt, but "neither the uncertain amount of the . . . right to payment nor its enforceability alter the conclusion that [Zurich's] claim existed" at the time the PMSG agreed to pay amounts that might accrue as a result of claims being made against the insurance policy. *United States Pipe & Foundry Co.*, 32 F.4th at 1331. It is also true that, at the time each contract was signed, depending on the claims asserted against the policies,

---

[2] As the Court is not dismissing the § 523(a)(6) claim, the Court leaves open the question of whether Zurich's debt could include damages that arose only from the breach of the contracts and, therefore, could be considered a "new debt" that did not arise when Hardin/PMSG entered the contracts.

7

the amount of the debt could have been $0, but that does not change the fact that PMSG's "liability to pay . . . became fixed, . . . even though the amount due each year was contingent and even though that amount might be zero." *Id*. at 1332.  As Zurich points out, a "relationship" sufficient to support the existence of a claim "can be established by 'contact, exposure, impact, or privity,'" ZSB, at 5 (quoting *In re Piper Aircraft Corp.*, 162 B.R. 619, 624–28 (Bankr. S.D. Fla.), and, here, the relationship was established by privity.  Accordingly, the alleged facts demonstrate that a relationship between Zurich and Hardin was created by the signing of the insurance agreements, and that Hardin had already engaged in the conduct necessary to create a claim and a debt, regardless of what he did after the signing.

The cases cited by Zurich cloud the issue of when a claim arose, but, ultimately, do not persuade the Court that the conduct that created the claim could support a finding that the debt was for a willful and malicious injury.  Zurich cites to *In re Camellia Food Stores, Inc.*, 287 B.R. 52 (Bankr. E.D. Va. 2002), in which the bankruptcy court found that retrospective insurance premiums due for a policy agreement signed prepetition were not prepetition claims because the conduct that resulted in the losses did not occur until post-petition.  The bankruptcy court acknowledged that the Fourth Circuit Court of Appeals had "specifically rejected the concept that a right of payment must exist prior to the bankruptcy filing in order for a claim to arise pre-petition" and had, instead, "applied a conduct test

8

where it merely required the events giving rise to a claim [to] occur pre-petition." *In re Camellia Food Stores, Inc.*, 287 B.R. 52, 57 (Bankr. E.D. Va. 2002). The court further considered the events giving rise to the debt included the insurer's continued agreement to provide insurance coverage on a monthly basis and, therefore, since the policy became effective just four days before the debtor filed bankruptcy, the premiums attributable to the bulk of the coverage constituted a post-petition obligation. Even if the premise of *Camellia Food Stores* is correct, and, therefore, the liability under the agreements in this case did not arise until Zurich performed and provided the coverage for each of the four policy years at issue, the conduct that created the "debt" was PMSG's promise to pay premiums and Zurich's provision of insurance coverage. The debt was not created by PMSG's failure to pay or any actions taken by PMSG/Hardin that rendered PMSG unable to pay.

Similarly, Zurich cites to *In re Eli Witt Co.*, 213 B.R. 396 (Bankr. M.D. Fla. 1997), in which the bankruptcy court held that a claim for retrospective premiums for worker's compensation insurance arose only when the injuries to the workers occurred. *In re Eli Witt Co.*, 213 B.R. 396, 400 (Bankr. M.D. Fla. 1997) ("[C]laims which arose from prepetition accidents or occurrences but which are paid postpetition and/or are invoiced postpetition, yet prior to confirmation, will be entitled to the same treatment as the other claims which arose from prepetition accidents or occurrences."); *see also In re Broaddus Hosp. Ass'n*, 159 B.R. 763, 768 (Bankr. N.D.W. Va. 1993) (holding that a claim for payment of insurance

deductibles arose only as "the plaintiffs in the underlying actions sustained their respective injuries"); *but see In re Georgetown Steel Co., LLC*, 318 B.R. 313, 328 (Bankr. D.S.C. 2004) (stating that a "LSRP claim under the Prior Policy arose upon Policy inception, and the injuries were a contingency that had to be met to trigger liability," and opining that the court in "*Broaddus* did not address the conduct test and narrowly interpreted the definition of claim pursuant to 11 U.S.C. § 101(5), which appears to be contrary to applicable authority"). Like the *Georgetown Steel* court, this Court questions the correctness of the holdings of these cases, but even if the holdings are correct, the conduct that created the claim in this case was PMSG's promise to pay the future claims, Zurich's provision of insurance coverage during the policy year, and whatever caused the injury or accident, not the alleged wrongful acts by PMSG/Hardin.³ In short, under *Gaddy*, with the facts alleged in the Complaint, the debt at issue in this case could not be a debt for a willful and malicious injury unless PMSG/Hardin entered the insurance agreements without the intent to perform

---

³ Zurich also cites *In re HNRC Dissolution Co*., 371 B.R. 210 (E.D. Ky. 2007), aff'd, 536 F.3d 683 (6th Cir. 2008). That case considered whether "prospective post-confirmation deductible payments on insurance policies entered into by the former Debtors' estate with Zurich during the pendency of the bankruptcy are entitled to administrative expense priority." *Id*. at 13–14. The issue on appeal did not involve when a "claim" arose. Rather, the bankruptcy court denied administrative expense treatment to Zurich's claim because it was only estimated, as the losses had not occurred yet, and, therefore, it was not an "actual" and "necessary" expense within the meaning of § 503(b). In fact, the district court noted that there was no dispute that the amounts sought were "legal obligations," and the question was whether "the obligations constitute expenses incurred in the administration of the bankruptcy estate or mere *debt* owed under contract to which Zurich could attempt to recover as a creditor of the dissolved estate." *Id*. at 223 (emphasis added). And the court affirmed the bankruptcy court, agreeing that "[i]t is in this regard that Zurich's claim fails as a simple matter of statutory interpretation on both fronts: the claimed expenses are not 'actual' (i.e., not yet realized) and the payment thereof, when the obligations are realized, cannot act to preserve an estate that no longer exists." *Id*. at 225.

10

and knew with substantial certainty that Zurich would suffer a loss.

Zurich, however, has argued that the Complaint is sufficient to state a claim that, even at the inception of at least some portion of the yearly contracts, PMSG/Hardin never intended to pay Zurich. As the Court found in the Prior Order, the Complaint can be read, with inferences drawn in Zurich's favor, to allege that Hardin caused PMSG to enter the insurance program without the intent to pay Zurich. Further, the Court agrees with Zurich that whether Hardin could have reasonably foreseen that PMSG's failure to perform its obligations to pay future claims would have injured Zurich is a question that cannot be resolved at this stage. The Complaint placed Hardin on notice of Zurich's contention that PMSG/Hardin engaged in "false pretenses, false representations, and/or actual fraud" in connection with PMSG's debt incurred under its insurance program with Zurich," and the Court can infer from the allegations of Hardin's diversion of PMSG's assets that Hardin never intended for PMSG to pay Zurich. If proven, such facts could support a finding of nondischargeability under § 523(a)(6), just as they could support a finding of nondischargeability under § 523(a)(2)(A). *See generally Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 363, 136 S. Ct. 1581, 1588, 194 L. Ed. 2d 655 (2016) ("The debtors who commit fraudulent conveyances and the debtors who make false representations under § 523(a)(2)(A) could likewise also inflict "willful and malicious injury" under § 523(a)(6). There is, in short, overlap, but that overlap appears inevitable."). At this stage, the Court

cannot find that the Complaint fails to state a claim that the debt is for a willful and malicious injury caused by PMSG/Hardin's entry of insurance agreements without the intent to perform.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Motion (Doc. 54) is **DENIED**.

## END OF DOCUMENT

**Distribution List**

Steven T. Whitmer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

Julie L. Young
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

Michael Wolak
Locke Lord LLP
Terminus 200, Ste 2000
3333 Piedmont Road NE
Atlanta, GA 30305

Leon S. Jones
Jones & Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308

Leslie M. Pineyro
Jones and Walden, LLC

699 Piedmont Avenue NE
Atlanta, GA 30308

Henry C. Hardin, III
3245 Town Manor Circle
Dacula, GA 30019