**IT IS ORDERED as set forth below:**

Date: March 27, 2024



_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| | : | |
| HENRY C. HARDIN, III, | : | BANKRUPTCY CASE |
| | : | 18-70395-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| ZURICH AMERICAN INSURANCE CO., | : | ADVERSARY PROCEEDING |
| AMERICAN ZURICH INSURANCE CO., | : | NO. 19-05145-LRC |
| THE ZURICH SERVICES CORP., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HENRY C. HARDIN, III, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

### **ORDER**

Before the Court are Plaintiff *Zurich's Motion for Entry of Scheduling Order* (Doc.

83, the "Motion for Scheduling Order"), to which a *Response to Motion for Entry of Scheduling Order* (Doc. 85) was filed by Henry C. Hardin III ("Hardin"), and *Zurich's Motion to Compel Production of Documents* (Doc. 84, the "Motion to Compel"), which Hardin opposes. *See Response in Opposition to Motion to Compel* (Doc. 86).[1]  In the Motion to Compel, Zurich seeks discovery in furtherance of its claim that Hardin's debt to Zurich is nondischargeable under § 523(a)(2)(A) or § 523(a)(6) of the Bankruptcy Code. Specifically, Zurich served upon Hardin requests for production of documents regarding transactions occurring after Hardin filed his bankruptcy petition involving "his house, lake house, farm house, and Restorative Health Interests," to which Hardin objected and asserted that any documents related to events occurring after the bankruptcy petition date were not relevant.  As to the Motion for Scheduling Order, the parties have agreed that entry of a new scheduling/case management order is appropriate in this case but disagree on whether the order should be entered before or after the Court resolves their pending discovery dispute.  As the Court resolves that dispute herein, the parties' disagreement over when to enter a scheduling order is moot, and the Court will direct the parties to confer and attempt to agree to a new scheduling/case management order.

Federal Rule of Civil Procedure 37, made applicable to this adversary proceeding

---

[1] In resolving these matters, the Court has also considered Zurich's *Reply in Support of Motion for Entry of Scheduling Order* (Doc. 88) and Zurich's *Reply in Support of Motion to Compel* (Doc. 87).

by Rule 7037 of the Federal Rules of Bankruptcy Procedure, provides that a party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The scope of discovery that may be the subject of such an order is dictated by Rule 26 of the Federal Rules of Civil Procedure. *In re Sholar*, 2008 WL 7874791, at *6 (Bankr. N.D. Ga. Sept 4, 2008). That rule states: "[u]nless otherwise limited by court order," the scope of discovery is "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). "The burden is on the party resisting discovery on relevancy grounds to support his objection" and "generally, the mere cry of irrelevance without any statement in support of the objection is disfavored by the court." *In re Short*, 2022 WL 301659, at *5 (Bankr. M.D.N.C. Jan. 28, 2022); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 8666473, at *3 (N.D. Ga. Aug. 16, 2018); *Alcoa, Inc. v. Universal Alloy Corp.*, 2016 WL 11499567, at *4 (N.D. Ga. Sept. 9, 2016); *Sw. Insulation, Inc. v. Gen. Insulation Co.*, 2016 WL 9244822, at *3 (N.D. Tex. Apr. 25, 2016) (stating that a "'party seeking to resist discovery on these grounds still bears the burden of making a specific objection and

3

showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address ... the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit'").

To determine what discovery may be relevant to a claim or defense, the Court must consider what evidence would prove the elements of the claims or defenses at issue. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *see generally Int'l Motor Contest Ass'n, Inc. v. Brzezinski Racing Prod., Inc.*, 2019 WL 13216584, at *4 (N.D. Iowa Sept. 16, 2019) (outlining the elements of the claim to be proven to determine what information was relevant in the case); *Carlson v. Colorado Ctr. for Reprod. Med., LLC,* 341 F.R.D. 266, 277 (D. Colo. 2022) (same); *Kanzie v. AT&T Mobility Services, LLC,* 2020 WL 3250605, at *3 (S.D. Cal. June 16, 2020) ("The initial inquiry for the Court is whether Plaintiff has shown that a store roster of coworkers '... has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.' FRE 401. For this analysis the Court addresses the elements of the claims that cover this dispute.").

Here, the claims at issue will require Zurich to establish the existence of a debt that

4

arose from either fraud or a willful and malicious injury to Zurich or its property interest. In a prior order, the Court found that Zurich's complaint survived Hardin's motion for judgment on the pleadings because Zurich had pled sufficient facts to state a claim that Hardin incurred the debt owed to Zurich with no intent to pay Zurich.[2] As Zurich correctly notes, the Court can infer Hardin's wrongful intent to defraud or willfully and maliciously injure Zurich from the surrounding circumstances. *See In re Wilder*, 2022 WL 4002261, at *3 (Bankr. N.D. Ga., Sept. 1, 2022); *Cinq Music Grp., LLC v. Jareiq Ahmad Josef Kabara,* 2021 WL 4267980, at *6 (Bankr. N.D. Ga., Sept. 2, 2021). Zurich insists that the "surrounding circumstances" include Hardin's conduct with respect to assets that Zurich believes should have been available to pay its debt, even well after Hardin placed those assets out of Zurich's reach and during the postpetition period. In this manner, Zurich submits, "Hardin's intent is revealed by, among other things, how he treated and continued to control the assets after he wrongfully diverted them to his wife, such that the transfers were in name only," such as continuing to live in the home he transferred to his wife while paying down the mortgage. Zurich now wants to know whether Hardin continued this

---

[2] Zurich argues that the Eleventh Circuit Court of Appeals' recent decision in *PRN Real Estate & Investments, Ltd. v. Cole*, 85 F.4th 1324 (11th Cir. 2023), makes this discovery even more relevant because the *Cole* decision will require the Court to reevaluate its earlier conclusion that Zurich cannot establish a basis for excepting its debt under § 523(a)(2) unless it can prove that Hardin agreed to the original insurance obligations with no subjective intent to perform. Hardin has not responded to this argument. As the Court finds that the discovery is relevant regardless of whether Zurich's view is correct, the Court need not address this issue to resolve the Motion to Compel but anticipates the parties may want the issue resolved prior to a trial on this matter. The Court leaves it to the parties to determine whether and how that will occur.

course of conduct regarding the specified assets post-bankruptcy. Hardin argues that what happened to assets that he did not own on the bankruptcy petition date after the bankruptcy trustee administered any claim of the bankruptcy estate regarding those assets is not relevant to and not likely to establish his intent when dealing with Zurich from 2008 to 2012. And, even if the information is relevant, when one looks at the amount of discovery already produced regarding the prepetition transactions involving these assets, such information is not proportional to the needs of the case. Beyond this statement, Hardin makes no effort to satisfy his burden on this point.

The Court agrees with Zurich that the information is relevant to the basic question surrounding the ongoing dispute between Hardin and Zurich—did Hardin ever deal honestly with Zurich? Zurich alleges that Hardin never intended to pay Zurich and set out from the beginning to make himself judgment proof. It relies on Hardin's use of PMSG's assets for personal purposes and other evidence to support a finding that Hardin attempted to move substantially all his assets into his wife's name for no consideration to avoid paying Zurich. Courts have long turned to "badges of fraud" to establish that kind of fraudulent intent to establish actual fraud and to determine whether to grant debtors a discharge. One of those badges of fraud is the "enjoyment of possession for use and benefit" of property supposedly transferred by a debtor to family or a close friend. *In re Coady*, 2008 WL 2995162, at *5 (Bankr. S.D. Fla. Aug. 1, 2008), *aff'd sub nom. Coady v. D.A.N. Joint*

*Venture, L.P.,* 2009 WL 9041189 (S.D. Fla. Apr. 1, 2009), *aff'd sub nom. In re Coady*, 588 F.3d 1312 (11th Cir. 2009); *In re Bellassai*, 451 B.R. 594, 602–03 (Bankr. S.D. Fla. 2011) (finding that debtor's "continued enjoyment of the material comforts purchased with the fruits of his labor, and the arrangement . . . precisely tailored to shield those material comforts from execution by creditors" was a badge of fraud indicating intent to hinder, delay, and defraud his creditors). Logically, if Hardin is the kind of person who would engage in fraudulent transfers to avoid paying Zurich after he became liable to Zurich, he may also be the kind of person who would agree to a business deal with no subjective intent to honor it. True, a significant amount of time passed between Hardin's initial dealing with Zurich and the post-petition period in which Zurich is interested. But the Court cannot say that what occurred regarding these assets postpetition would not assist Zurich in proving its claim that Hardin never intended to pay Zurich. *See generally In re Eifler*, 2013 WL 3300639, at *17 (Bankr. W.D. Ky. July 1, 2013), *aff'd sub nom. Eifler v. Wilson & Muir Bank & Tr. Co.*, 2014 WL 314473 (W.D. Ky. Jan. 28, 2014), *aff'd*, 588 F. App'x 473 (6th Cir. 2014) (denying § 523(a)(2)(A) claim (but only after trial) that potential fraudulent transfers either occurred after the debt was incurred, and therefore, the debt did not arise from the transfer, *or* that the debtor "lacked the requisite intent to deceive or defraud"). The Court also agrees that Hardin's vague statements regarding his proportionality objection are not sufficient to meet the burden borne by the party resisting discovery. While it may

7

be that additional information regarding the transferred assets is unreasonably cumulative or duplicative of what Hardin has already produced, the Court has insufficient detail to determine if this is the case. The Court has nothing before it to suggest that production of this information would be unduly burdensome or expensive. This case involves the dischargeability of a significant debt and is complex. Based on the papers filed, the Court cannot conclude that Hardin should be excused from producing relevant information.

Accordingly,

IT IS ORDERED that the Motion to Compel is GRANTED;

IT IS FURTHER ORDERED that Hardin shall comply with Zurich's document request by producing non-privileged, responsive documents in his control;

IT IS ORDERED that the Motion for Scheduling Order is DENIED as MOOT;

IT IS FURTHER ORDERED that the parties are DIRECTED to confer and, within thirty (30) days of the date of the entry of this Order, attempt to propose an appropriate scheduling/case management order.

**END OF DOCUMENT**

**Distribution List**

**Steven T. Whitmer**
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

**Michael Wolak**
**Locke Lord LLP**
Terminus 200, Ste 2000
3333 Piedmont Road NE
Atlanta, GA 30305

**Julie L. Young**
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

**Leon S. Jones**
Jones & Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308

**Leslie M. Pineyro**
Jones and Walden, LLC
699 Piedmont Avenue NE
Atlanta, GA 30308